Adriana Cara [SBN #221915]
adriana.cara@fisherbroyles.com
FISHERBROYLES, LLP
2244 Faraday Avenue, PMB
Carlsbad, CA 92008
Bus:  760-448-5669
Fax:  760-448-5687

Timothy L. Moore [SBN # 305168]
tim@tlmoorelawoffices.com
THE LAW OFFICES OF
TIMOTHY L. MOORE
811 Mason Street
San Francisco, CA 94108
T: 415-697-1105
F: 415-886-0588

Attorneys for Plaintiff,
JAMES PARR

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA— SOUTHERN DIVISION

| | |
|---|---|
| JAMES PARR, an individual,<br><br>　　　Plaintiff,<br><br>v.<br><br>WIND ENERGY TRANSPORT, LLC, a California limited liability company; DANI ROTHENBERG, an individual; BILL VILLARINHO, an individual; and DOES 1 through 50, inclusive,<br><br>　　　Defendants. | Case No. 8:22-cv-1342<br><br>COMPLAINT FOR DAMAGES<br><br>DEMAND FOR JURY TRIAL |

FISHERBROYLES®
A LIMITED LIABILITY PARTNERSHIP

COMPLAINT FOR DAMAGES AND JURY DEMAND

# I. **INTRODUCTION**

1.     Plaintiff JAMES PARR ("Plaintiff") brings this lawsuit against Defendants WIND ENERGY TRANSPORT, LLC, a California limited liability company ("WET"), Dani Rothenberg, an individual, and Bill Villarinho, an individual, to challenge, among other things, Defendants' unlawful misclassification of Plaintiff, a pilot driver, as an independent contractor.  As a pilot driver for WET, Plaintiff provided escort services to wind-turbine tractor-trailers carrying oversize loads.  Plaintiff rendered such services by operating a vehicle weighing less than 10,000 pounds, and performing the following duties: escorting semi-trucks transporting such oversize loads down interstates, highways, and roads; traffic control (e.g., assisting with lane changes and turns, closing intersections and lanes, maintaining a safe distance from public vehicles, flagging traffic, and assisting with parking); coning off loads; and fueling vehicles, as necessary.

2.     Defendants classified Plaintiff as an independent contractor rather than an employee to avoid their wage and hour obligations to Plaintiff under the Fair Labor Standards Act, 29 U.S.C. §§ 201, *et seq*. ("FLSA"). As a result of their unlawful misclassification of Plaintiff, Defendants have failed to pay Plaintiff minimum and overtime wages pursuant to the FLSA and have unlawfully deducted business expenses from Plaintiff's wages that WET was legally required to bear.

3.     As a condition of Plaintiff's employment, Defendants required Plaintiff to enter into an independent contractor agreement with WET, which contract required Plaintiff to agree to "lease to own" a 2018 Chevrolet Silverado 1500 Crew Cab Pickup Truck (identified by the last six digits of Vehicle Identification No. ("VIN") 319822 ("Vehicle").  Plaintiff was required to use the Vehicle to perform his duties as a pilot driver for WET.  The independent contractor agreement addendum shifted all costs related to the use of the Vehicle as a Pilot Driver to Plaintiff and provided as follows:

CONTRACTOR IS RESPONSIBLE FOR ALL VEHICLE RELATED EXPENSES

INCLUDING INSURANCE, MAINTANANCE AND ANY NOT MENTIONED RESPONSIBILITIES DEEMED NECESSARY WHILE IN CONTRACT WITH WIND ENERGY TRANSPORT.

Plaintiff paid approximately $5,000 to maintain and upgrade the Vehicle so he could perform his duties as a pilot driver for WET, which included the purchase of new tires, replacing the front bumper, adding a tow hitch and paying for periodic oil changes every 3,000 miles.

4.     Additionally, the independent contractor agreement contained the following forfeiture provision ("Forfeiture Clause") set forth in the addendum to said agreement, which effectively impeded Plaintiff from resigning or working for another company as a pilot driver for 24 months from his hire date on pain of economic duress:

> Should independent contractor quit or is released for just cause, Wind Energy will retain vehicle and contractor forfeits all payments made to date. After 24 months of consecutive timely payments, independent contractor will own vehicle and this contract will require renewal.  During initial 24 months, vehicle must remain employed solely with Wind Energy Transport and is not authorized to contract with any third party.

5.     When Plaintiff reported a safety violation committed by another WET driver to WET, and which nearly resulted in Plaintiff's death, WET terminated him on or around August 8, 2020.  As a result, WET enforced the Forfeiture Clause, retained the Vehicle and kept the monthly payments Plaintiff tendered to WET to pay for the Vehicle, which payments totaled $10,384.56.  Significantly, Plaintiff had paid over 30% of the vehicle price of $30,000.00 before WET would have been contractually required to transfer title to the Vehicle to Plaintiff. Further, upon information and belief, WET carried a loan for the Vehicle owed to an unknown third-party lender throughout this period.

6.     Notwithstanding the fact Plaintiff paid virtually all operating expenses associated with operating the vehicle, as noted above, WET deducted mileage and other

FISHERBROYLES®
A LIMITED LIABILITY PARTNERSHIP

expenses associated with the Vehicle's operation when it paid income tax, including insurance coverage.

7. Upon information and belief, the treatment Plaintiff received from WET regarding the Vehicle reflected a deliberate policy by Defendants because at least one other Pilot Driver was forced to forfeit his interest in a vehicle under substantively identical circumstances.

8. Defendants, thereafter, failed to pay Plaintiff all wages due at termination, in violation of the FLSA. With respect to his FLSA claims, Plaintiff seeks to recover monetary damages, liquidated damages, prejudgment interest, and civil penalties and costs, including reasonable attorneys' fees. Plaintiff is also entitled to restitution of the monies he paid WET under the independent contractor agreement to purchase the Vehicle under the legal theories of rescission, unjust enrichment and unlawful business practices in violation of Business & Professions Code § 17200.

## II.   JURISDICTION AND VENUE

9. This Court has subject matter jurisdiction over Plaintiff's claims under the FLSA because, *inter alia*, they are brought pursuant to 29 U.S.C. § 216(b) and because they raise a federal question pursuant to 28 U.S.C. § 1331. This Court has supplemental jurisdiction over Plaintiff's California breach of contract, rescission, unjust enrichment and quantum meruit claims pursuant to 28 U.S.C. § 1367 because, *inter alia*, those claims are so related to the claims asserted under the FLSA that they form part of the same case and controversy.

10. This Court also has subject matter jurisdiction over Plaintiff's claims on diversity jurisdiction grounds pursuant to 28 U.S.C. § 1332. As alleged *infra*, Plaintiff Parr is a citizen of Texas. Plaintiffs allege on information and belief that the members of Defendant WET (a California limited liability company) and the individual Defendants are

FISHERBROYLES
A LIMITED LIABILITY PARTNERSHIP

not citizens of Texas. The amount in controversy exceeds $75,000, exclusive of interests and costs.

11.     Venue properly lies in this judicial district pursuant to 28 U.S.C. § 1391 because Defendant WET resides in this judicial district, because a substantial part of the events or omissions giving rise to the claims occurred in this judicial district, because Defendants directed and controlled Plaintiff in this judicial district, and because Defendants are subject to this Court's personal jurisdiction with respect to this action.

### III.    PARTIES

12.     Plaintiff JAMES PARR is currently a resident of Hallettsville, Lavaca County, Texas. Plaintiff was employed by WET from December 30, 2019, to August 8, 2020, and during this timeframe was a resident of Hallettsville, Lavaca County, Texas. Throughout his employment with WET, Plaintiff was an employee of WET within the meaning of the FLSA.

13.     Defendant, WIND ENERGY TRANSPORT, LLC is a California limited liability company, whose principal place of business at all times relevant to this Complaint was 18063 Redondo Circle Huntington Beach CA 92648, and which does business within this judicial district. WET's principal place of business is currently 151 Kalmus Dr L2, Costa Mesa, CA 92626.

14.     Defendant, WIND ENERGY TRANSPORT, LLC is an employer within the meaning of the FLSA, and employs individuals who are engaged in interstate commerce. WET is, and was at all times relevant hereto, engaged in the interstate transportation of wind turbine assemblies including blades, nacelles, hubs and tower sections across the United States, and employed Plaintiff as a pilot driver to escort semi-trailers that transported oversized loads.

15.     Defendant Dani Rothenberg ("Rothenberg"), an individual who upon information and belief resides in Orange County, California, is within the jurisdiction of

FISHERBROYLES
A LIMITED LIABILITY PARTNERSHIP

this Court, and at all times hereinafter mentioned was and is a member and President of WET and acted directly or indirectly in the interest of WET in relation to its employees by setting policies and procedures, making hiring and firing determinations, controlling payroll, making payroll deductions, signing payroll checks and generally exerting operational control. Rothenberg suffers or permits employees to work and is an employer as defined in §3(d) of the FLSA, 29 U.S.C. § 203(d).

16.    Defendant Bill Villarinho ("Villarinho"), an individual who upon information and belief resides in Orange County, California, within the jurisdiction of this Court, and at all times hereinafter mentioned, upon information and belief, was and is a member and Vice President of WET and acted directly or indirectly in the interest of WET in relation to its employees by setting policies and procedures, making hiring and firing determinations, controlling payroll, making payroll deductions, signing payroll checks and generally exerting operational control. Villarinho suffers or permits employees to work and is an employer as defined in §3(d) of the FLSA, 29 U.S.C. § 203(d).

17.    The true names and capacities of Defendants DOES 1 through 50 ("DOES") are unknown to Plaintiff at this time, and Plaintiff therefore sues DOES under fictitious names. Plaintiff is informed and believe, and thereon alleges, that each DOE is highly responsible in some manner for the events and happenings referred to herein, and legally caused the injuries and damages alleged in this Complaint. Plaintiff is informed and believes, and thereon allege, that each DOE would include, but not be limited to, certain DOES who were and are managers, supervisors, executives, and/or employees of Defendant who exercised economic control and control over the nature and structure of the employment relationship between Defendant and Plaintiff, thereby making certain DOES employer(s) under the FLSA, 29 U.S.C. § 203(d). The pleadings will be amended as necessary to obtain relief against DOES when the true names are ascertained, or as permitted by law or by the Court.

18.    There exists, and at all times herein mentioned existed, a unity of interest and ownership between the named Defendants and DOES, such that any corporate

FISHERBROYLES
A LIMITED LIABILITY PARTNERSHIP

individuality and separateness between the named Defendants and DOES has ceased, and the named Defendants and DOES are alter ego of one another in that the named Defendants and DOES effectively operate as a single enterprise or are the mere instrumentalities of one another.

19.     At all material times herein, Defendants and DOES were the agent, servant, co-conspirator and/or employer of each other, acted within the purpose, scope, and course of said agency, service, conspiracy and/or employment and with the express and/or implied knowledge, permission, and consent of the remaining defendants, and ratified and approved the acts of the other defendants. However, each of these allegations are deemed alternative theories whenever not doing so would result in a contradiction with the other allegations.

20.     Whenever reference is made in this Complaint to any act, deed, or conduct of Defendants, the allegation means that Defendants engaged in the act, deed, or conduct by or through one or more of its officers, directors, agents, employees, or representatives who was actively engaged in the management, direction, control, or transaction of Defendants' ordinary business and affairs.

## IV.   <u>FACTUAL BACKGROUND</u>

### A. <u>WET's Business Model</u>

21.     WET is a trucking company that provides transportation services to its customers in the United States. Specifically, WET transports wind turbine assemblies, including blades, nacelles, hubs, and tower sections for its customers. At all times relevant to this Complaint, WET operated and ran its business out of facilities located in Huntington Beach, California, in Orange County.  WET's principal place of business is currently located in Costa Mesa, California, which is also located in Orange County.  To run its

transportation business, WET hires individuals who drive wind turbine trailers to move oversized cargo for WET on a regular basis.

22.     To ensure the safe transport of the above-described oversized loads, WET employed at all times relevant to this Complaint a fleet of pilot drivers. Pilot drivers, who drive vehicles weighing less than 10,000 pounds to perform their job duties, must be vigilant for any hazards, slow-downs, and other challenges the semi-trailer drivers may face.  At all relevant times, as a condition of working for WET, pilot drivers are required to sign a form titled "Independent Contractor Agreement" that WET unilaterally prepared (hereafter, "the Agreement"), under which pilot drivers were made to acknowledge their status as independent contractors. Under the Agreement, pilot drivers were required to assume WET's responsibilities to pay all business-related expenses relating to the performance of their job duties (collectively "Business-Related Expenses").

23.     Section 6 of the Agreement states that pilot drivers "[are] independent contractor[s] and shall not become or be deemed [ ] employee[s] . . . [of] the Company." However, in actual practice, WET significantly controlled the details of the work performed by pilot drivers like Plaintiff during the relevant period, as alleged below.

24.     During all relevant times, WET employed an application process that enabled it to control the pilot drivers to a significant degree. Upon information and belief, WET also performed or reserved the right to perform on each individual pilot driver a full background check and employment eligibility verification, including a credit check, a criminal history check, an employment check, and a drug test.

25.     During all relevant times, WET required pilot drivers to obtain certain types of insurance and specific coverage levels on the vehicles they used to perform their duties as a condition of working for WET. In actuality, WET itself, obtained and provided these insurance coverages and charged all related costs to the pilot drivers. (See Section 7 and Schedule C of the Agreement).

26.     During all relevant times, WET required pilot drivers to affix its logo on the vehicles drivers used to perform services under the agreement during the term thereof.

WET also strictly imposed various policies, instructions, work rules, and regulations on pilot drivers, disobedience of which would result in worker discipline, including reprimands, warnings, suspensions, and up to immediate termination. WET strictly oversaw recordkeeping requirements by which pilot drivers were required to document, on forms generated by WET, pilot drivers' work and hours in a manner and frequency dictated by WET. WET kept and maintained these records. WET also strictly required pilot drivers to inspect oversized cargo before and after the transportation of each load in a matter dictated by WET, and to perform other maintenance inspections, subject to suspension and even termination for disobedience.

27.     During all relevant times, WET also controlled work assignments for all pilot drivers, and at all times relevant to this Complaint, directed pilot drivers' work from WET's Huntington Beach office. In addition, WET unilaterally set pilot drivers' pay rates, which are not negotiable as would be expected in a true independent contractor relationship. (See Section 4 and Schedule B of the Agreement).

28.     During all relevant times, Pilot Drivers working for WET were dependent on WET for their livelihood. The days and hours worked by pilot drivers were controlled by WET. Drivers were provided assignments and were required to continually contact WET during the transport to receive instructions. Pilot drivers were required to be available at all times by mobile phone or a two-way communication device to receive work-related instructions. (See Schedule A of the Agreement).  Pilot drivers who worked for WET were integrated into WET's regular business and were essential to WET's day-to-day operations. Pilot drivers were not engaged in a separate business or profession, but instead worked exclusively for WET on a long-term basis, rather than periodically, and regularly worked for WET at least 5 days a week. In fact, the Agreement expressly provides for an initial term of one year. (See Section 3 of Agreement) ("This Agreement shall commence on the Effective Date and shall terminate on 12-31-2020 (the 'Term')."). Significantly, the Agreement also contains a non-compete and non-solicitation provision, which prohibits

pilot drivers like Plaintiff from soliciting any WET customers during the contract term and for a period of one year thereafter. (See Section 11 of the Agreement).

29.    During all relevant times, Plaintiff was required to perform most of the maintenance on wind-turbine trailers assigned to him in addition to his regular job duties. He was also responsible for picking up and transporting drivers to various destinations. Both duties required Plaintiff to travel across multiple states. WET also required Plaintiff to load and unload wind turbine blades to and from trailers that were not assigned to him.

30.    During all relevant times, WET maintained the right to terminate pilot drivers immediately for what WET deemed, in its sole discretion, to be "inappropriate conduct" or for a pilot driver's failure to perform services to the reasonable satisfaction of WET without being provided the opportunity to cure any alleged deficiencies. (See Section 5 of the Agreement).

31.    Before Plaintiff's employment by WET, WET engaged with another third-party company to supply pilot drivers. Shortly before WET hired Plaintiff, it switched to a model wherein it would contract with putative "independent contractors," like Plaintiff, over whom Defendants exercised control tantamount to an employer-employee relationship, as described above. During the time of Plaintiff's employment, all or nearly all of WET's pilot drivers were putative "independent contractors."

32.    Shortly after Plaintiff's employment ended in August 2020, WET changed its model yet again and began employing pilot drivers as W-2 employees.

33.    Upon information and belief, Defendants sought to misclassify pilot drivers to retain the benefit of the arrangement that prevailed before Plaintiff's employment. That is, they wanted pilot drivers without the overhead associated with employing pilot drivers, such as all of the operating expenses associated with being a pilot driver (including the cost of their vehicle), mandatory state contributions like unemployment insurance, and federal contributions such as Medicare and Social Security.

34.     In the summer of 2020, the California Labor Commissioner's Office filed lawsuits against Uber and Lyft for committing wage theft by misclassifying drivers as independent contractors.

## B. Plaintiff's Employment and WET's Termination Thereof.

35.     WET hired Plaintiff as a pilot driver and required him to sign a contract in the form of the Agreement as a condition of his employment ("Parr Agreement").  The Parr Agreement with Schedules A through C referenced therein are attached collectively to this Complaint as **Exhibit 1**; Plaintiff executed the Parr Agreement on December 30, 2019. However, on information and belief, WET did not sign the Parr Agreement; indeed, many areas of the Parr Agreement, such as the effective date, were left blank.

36.     The Parr Agreement incorporates Schedule B, which document provides a flat rate compensation schedule based on the nature of work performed and which indicates, in pertinent part, as follows:

IN ORDER TO EXPEDITE PAYMENT, PLEASE EMAIL YOUR INVOICE TO ESCORTS@WINDENERGYTRANSPORT.COM WITHIN 48 HRS OF DELIVERY.

WE DO OFFER QUICKPAY AT 3% VIA ACH OR PAYPAL (PAYPAL APPLIES FEE) WITH RECEIPT OF SUITABLE INVOICE.

WE PRIDE OURSELVES IN PAYING ESCORTS IN A TIMELY MANNER AFTER DELIVERY. STANDARD PAY WITHOUT QUIKCPAY - PILOT INVOICES ARE PAID 30 DAYS FROM THE DATE OF THE INVOICE DATE. IF ANY OF THE REQUIRED INFORMATION IS NOT PROVIDED IN A TIMELY OR CLEAR PROCESS, THIS MAY DELAY PAYMENTS.

**FISHERBROYLES**
A LIMITED LIABILITY PARTNERSHIP

37.     The Parr Agreement also incorporates Schedule C, titled "Pay Addendum To Pilot Independent Contractor Agreement," which document contains the payment terms of the lease to own arrangement of the Vehicle and the Forfeiture Clause described above:

> Should independent contractor quit or is released for just cause, Wind Energy will retain vehicle and contractor forfeits all payments made to date. After 24 months of consecutive timely payments, independent contractor will own vehicle and this contract will require renewal.  During initial 24 months, vehicle must remain employed solely with Wind Energy Transport and is not authorized to contract with any third party.

38.     Further, the Parr Agreement contains a severability clause at Section 16, titled "Partial Invalidity," which provides, as follows:

> Each provision of this Agreement shall be valid and enforceable to the fullest extent permitted by law.  If any provision of this Agreement or the application of such provision to any person or circumstance shall, to any extent, be invalid or unenforceable, the remainder of this Agreement, or the application of such provision to persons or circumstances other than those as to which it is held invalid or unenforceable, shall not be affected by such invalidity or unenforceability, unless such provision or such application of such provision is essential to this Agreement.

39.     As alleged in more detail below, Defendants failed to pay Plaintiff minimum wage compensation because WET failed to pay all of Plaintiff's wages free and clear. WET also failed to pay Plaintiff's wages for the times when he was on call, which was any time he was not scheduled to work.

40.     Specifically, despite purportedly being an "independent contractor," Plaintiff was required to submit vacation and other time-off requests via a Google Document. This included requesting time off for periods when Plaintiff, and other so-called "independent contractors," were not scheduled to work.  Other so-called "independent contractors" employed by Defendants were required to follow the same procedure. Defendants would

FISHERBROYLES®
A LIMITED LIABILITY PARTNERSHIP

then grant or deny the time-off request. Otherwise, even if Plaintiff was not scheduled to work, he was on-call.

41. Further, Defendants failed to pay Plaintiff overtime compensation as required by the FLSA despite the fact that Plaintiff routinely worked over 40 hours each workweek.

42. Defendants routinely required Plaintiff to take on additional tasks outside of his assigned duties. These additional duties necessarily required Plaintiff to work more than 40 hours per week. Defendants did not pay Plaintiff for working the additional hours.

43. During each week of his employment from the period December 19, 2019, to August 8, 2020, Defendants required Plaintiff to work 60 to 70 hours per week, and as many as 80-90 hours per week, often 7 days per week. WET maintains logs of the hours worked by its truck drivers via an application called "ELB" and/or a cloud software platform called Zoho. Neither Plaintiff nor his counsel can access these records and, upon information and belief, they would confirm the high volume of hours worked by Mr. Parr on a regular basis during his employment.

44. For example, in January 2020, for example, Plaintiff and his supervisor, Robert Sloan, worked 80-90 weeks, 7 days per week.  Plaintiff was required to perform duties outside the scope of his duties as a pilot driver, which consisted of steering semi-trucks and shuttling semi-truck drivers to and from their vehicles, all for the benefit of WET.  For example, because of problems with semi-trucks and trailers near Dickinson, North Dakota, caused by the negligence of other WET employees, Mr. Parr was required to source shocks and other parts for damaged trailers; locate a welding shop; locate a hydraulic shop, shuttle fuel to three different semi-trucks after driving was complete for the day; greased and fuel the trailers; and bleed the trailers' hydraulic systems of air and water. Plaintiff also arranged police escorts, hauled fuel for his assigned semi-trucks and trailers, and located parts, and facilitated necessary repairs. Indeed, during his employment, Plaintiff averaged 3 to 4 hours per day performing work the above-described work in addition to his duties as a pilot driver.

45.     Because Mr. Sloan is a semi-truck driver, WET logs, including the "ELB" application noted above, would show the hours he worked during January 2020. Upon information and belief, those records would show Mr. Sloan worked a minimum of 60-70 hours per week. Plaintiff worked at least as many hours as Mr. Sloan because Plaintiff served both as Mr. Sloan's pilot driver, and therefore was driving when Mr. Sloan was driving, and Plaintiff also performed the additional duties noted above in Paragraph 44.

46.     Further, during January 2020, WET caused a GPS tracking device to be affixed to Plaintiff's Vehicle. Upon information and belief, WET still possesses records from the GPS tracking device that would substantially confirm Plaintiff's allegations regarding hours worked.

47.     Plaintiff would also assist other driving groups to whom he was not assigned with making turns—the semi-trucks were hauling oversized wind turbine parts—controlling traffic and hauling fuel.  Plaintiff was even forced to purchase at his own expensive tools to repair the turbine blades his drivers hauled.

48.     While Plaintiff's gross monthly pay was theoretically $11,000, per the Parr Agreement, after expenses withheld by WET for insurance and pickup truck payments, Plaintiff received at most $8,400 per month in two biweekly payments. However, as a further condition of employment, Defendants also required Plaintiff to bear necessary costs of his employment that should have been borne by WET, such as charges for his telephone, food, hotel accommodations—travel was a necessary component of Plaintiff's employment—and equipment, including payments and insurance for the work pickup truck Plaintiff was purchasing from Defendants.

49.     Plaintiff never received overtime compensation despite working over 40 hours per week every week when employed by Defendants during the period alleged above.

50.     Plaintiff was paid less than the FLSA minimum wage for all but three months of his employment at WET. Specifically, his average hourly pay, when expenses are factored, was as follows:

| MONTH | GROSS PAY | EXPENSES | NET PAY | HOURLY |
|-------|-----------|----------|---------|--------|
| Jan-20 | $6,900 | $5,576.50 | $1,323.50 | $8.27 |
| Feb-20 | $7,900 | $8,045.12 | ($145.12) | ($0.91) |
| Mar-20 | $7,875 | $5,885.92 | $1,989.08 | $12.43 |
| Apr-20 | $8,400 | $6,889.90 | $1,510.10 | $9.44 |
| May-20 | $8,400 | $15,278.65 | ($6,878.65) | ($42.99) |
| Jun-20 | $7,823.08 | $10,895.52 | ($3,072.44) | ($19.20) |
| Jul-20 | $7,246.16 | $12,177.48 | ($4,931.32) | ($30.82) |
| Aug-20 | $0.00 | $5,059.07 | ($5,059.07) | ($31.62) |
| Sep-20 | $647.46 | n/a | $647.46 | |
| TOTAL | $55,191.7 | $69,808.16 | ($14,616.46) | n/a |

51.    In short, not only did Defendants fail to pay Plaintiff the FLSA minimum wage for most of the weeks when they employed Plaintiff, for all but three of those months of Plaintiffs employment he spent more on work-related expenses than he was paid.

52.    On August 8, 2020, Plaintiff talked to Villarinho over the phone shortly after nearly being nearly crushed to death as a result of the unsafe actions of another WET driver named Chip; Plaintiff cannot recall Chip's last name, only that he was an owner / operator for WET. Plaintiff was understandably shaken and was both scared and angry in the aftermath of such an experience, which came across in his conversation with Villarinho. Apparently, Villarinho did not like Plaintiff's tone despite the circumstances giving rise to Plaintiff's extreme distress and his response was to terminate Plaintiff immediately via text message shortly after that telephone conversation.  Villarinho told Plaintiff that Plaintiff should not have burned his bridge with Villarinho, and that "You don't kiss the ass today that you might have to kiss tomorrow." Villarinho also told Plaintiff that he would withhold his final paycheck until Plaintiff returned the Vehicle.  Defendants ultimately obtained custody of the Vehicle, retained all payments Plaintiff made to pay for the vehicle, and

FISHERBROYLES
A LIMITED LIABILITY PARTNERSHIP

failed to pay Plaintiff's overtime wages in violation of the FLSA.  WET continues to owe Plaintiff for these amounts.

53.     WET also did not provide Plaintiff's final paycheck of $647.46 to him until September 16, 2020. Defendants failed to provide any itemization or breakdown to explain what was deducted from Mr. Parr's pay and why. Upon information and belief, Defendants improperly deducted expenses necessary to Plaintiff's employment from the final paycheck, including costs allegedly associated with removing the aftermarket bumper Plaintiff had installed on the Vehicle—even though, to this day, the bumper remains on the Vehicle.

54.     WET shifted its legal duty to maintain Plaintiff's employment and payroll records onto Plaintiff.  The Parr Agreement provides, in part, at Section 9 that,

> Contractor will, at its sole cost and expense, maintain complete and accurate books and records and internal controls regarding the Services, compliance with this Agreement and the fees and costs charged to the Company, and will keep such records for not less than two (2) years after termination of this Agreement.

WET never provided Plaintiff with paperwork, statements, an accounting, or other documents reflecting payment of Plaintiff's wages and related deductions.

55.     Upon information and belief, Defendants' continued violation of the FLSA was willful because they knew, or showed reckless disregard for the fact, that prior to Mr. Parr's termination he was misclassified as an independent contractor.  Indeed, upon information and belief, Defendants' conduct subsequent to their termination of Mr. Parr confirms WET willfully misclassified him as an independent contractor. Roughly six months after Defendants fired Plaintiff, and after the California Labor Commissioner's Office commenced public and widely reported litigation against Lyft and Uber under Assembly Bill 5 ("AB5") for misclassifying their respective drivers as independent contractors, Defendants ceased designating employees in Mr. Parr's position as independent contractors and converted individuals working as pilot drivers to employees.

It bears noting that on June 28, 2022, the U.S. Supreme Court refused to hear a challenge by the California Trucker Association, Inc., to AB5, thereby requiring transportation companies like WET to classify their pilot drivers as employees and not independent contractors.

## FIRST CAUSE OF ACTION

### *Failure to Pay Minimum Wage*

### Fair Labor Standards Act, 29 U.S.C. § 206

(Against All Defendants)

56.     Plaintiff realleges and incorporates the above paragraphs as though fully set forth herein.

57.     Upon information and belief, WET defined its work week as Sunday 12:01 am through Saturday at midnight during the period when it employed Plaintiff.

58.     Defendant violated the FLSA by knowingly failing to compensate Plaintiff for all hours worked and by knowingly failing to pay Plaintiff the federally mandated minimum wage in violation of 29 U.S.C. § 206 for all hours worked. Specifically, with the exception of January 2020, March 2020, and April 2020, WET failed to pay Plaintiff the minimum wage of $7.25 as required by the FLSA.

59.     Defendant further violated 29 U.S.C. § 206 by deducting Business-Related Expenses from Plaintiff's wages.   29 C.F.R. § 531.35 emphasizes that payments that are not made "free and clear" cannot constitute wages under the FLSA. Section 531.35 provides, in pertinent part, as follows:

> Whether in cash or in facilities, "wages" cannot be considered to have been paid by the employer and received by the employee unless they are paid finally and unconditionally or "free and clear." The wage requirements of the Act will not be met where the employee "kicks-back" directly or indirectly to the employer or to another person for the employer's benefit the whole or part

of the wage delivered to the employee. This is true whether the "kick-back" is made in cash or in other than cash.

60.     Here, Defendants required Plaintiff to pay thousands of dollars in Business-Related Expenses. These costs that should have been borne exclusively by WET as it was Plaintiff's employer at the time those expenses were incurred. The Parr Agreement does not provide Plaintiff with a right of reimbursement for Business-Related Expenses. Further, Defendants' failure to make the compensation payments under the Parr Agreement "free and clear" negates any assertion on Defendants' part that the payments under the Parr Agreement constitute wages.

61.     Defendants' actions were willful. Accordingly, Defendants are liable under 29 U.S.C. § 216(b) to Plaintiff for liquidated damages in an amount equal to the wages Defendants failed to pay Plaintiff as a result of the foregoing violation of 29 U.S.C. § 206.

62.     Plaintiff is entitled to all of the unpaid wages, plus an additional equal amount as liquidated damages, court costs, attorneys' fees and expenses that he expends in successfully bringing this action to recover his unpaid wages and any other relief deemed appropriate by the Court.

## SECOND CAUSE OF ACTION

### *Failure to Pay Overtime*

### Fair Labor Standards Act, 29 U.S.C.§§ 207 and 215(a)(2)

(Against All Defendants)

63.     Plaintiff realleges and incorporates the above paragraphs as though fully set forth herein.

64.     Under the FLSA, 29 U.S.C. §§ 207 215(a)(2), Defendants were and are required to compensate Plaintiff for all hours worked in excess of forty (40) hours per workweek.

65.     The FLSA requires that overtime compensation be paid at a rate not less than one and one-half (1.5) the regular rate of pay of Plaintiff.

FISHERBROYLES
A LIMITED LIABILITY PARTNERSHIP

66.    For purposes of calculating overtime compensation, the FLSA provides that the regular rate of pay includes all remuneration for employment paid to or on behalf of the Plaintiff.

67.    Defendants required, suffered and/or permitted Plaintiff to work in excess of forty (40) hours per workweek but did not compensate him for such overtime work. By way of example, WET failed to pay Plaintiff overtime compensation during each of the from January 2020 through the end of his employment with Defendants on August 8, 2020.

68.    As a result of Defendants' policy and practice of failing to pay overtime compensation, Plaintiff has been damaged in that he has been paid by Defendants the overtime compensation that he earned while employed by WET.

69.    Defendants' actions were willful. Accordingly, Defendants are liable under 29 U.S.C. § 216(b) to Plaintiff for liquidated damages in an amount equal to the overtime wages Defendants failed to pay Plaintiff as a result of the foregoing violation of 29 U.S.C. §§ 207 and 215(a)(2).

70.    Plaintiff is entitled to all of the unpaid overtime wages, plus an additional equal amount as liquidated damages, court costs, attorneys' fees and expenses that he expends in successfully bringing this action to recover his unpaid overtime wages and any other relief deemed appropriate by the Court.

### THIRD CAUSE OF ACTION

*Recordkeeping Violations*

(Against All Defendants)

71.    Plaintiff realleges and incorporates the above paragraphs as though fully set forth herein.

72.    Defendants, employers subject to the provisions of the FLSA, violated the provisions of sections 11(c) and 15(a)(5) of the FLSA in that they failed to make, keep, and preserve adequate and accurate records of employees and the wages, hours and other conditions and practices of employment maintained by them as prescribed by regulations

duly issued pursuant to authority granted in the FLSA and found in 29 C.F.R. Part 516. Specifically, Defendants failed to maintain a record of hours worked by Plaintiff.

73.     Plaintiff respectfully requests the relief set forth in the Prayer of this Complaint.

## FOURTH CAUSE OF ACTION

### *Breach of Contract*

(Against WET)

74.     Plaintiff realleges and incorporates the above paragraphs as though fully set forth herein.

75.     On or about December 30, 2019, Plaintiff and WET entered into the Parr Agreement, a copy of which is attached hereto as **Exhibit 1**. Section 3 of the Parr Agreement states that WET agreed to retain Plaintiff for an initial term of one year (through December 31, 2020) provided that (a) WET did not exercise its right to terminate the Parr Agreement upon 30 days' written notice; or (b) have a legitimate basis to terminate the Parr Agreement based on the other narrowly defined exceptions. (See Parr Agreement, Section 5).

76.     The consideration set forth in the Parr Agreement was fair and reasonable.

77.     Plaintiff performed all conditions, covenants, and promises required by him on his part to be performed in accordance with the terms and conditions of the Parr Agreement.

78.     On or about August 8, 2020, WET breached the Parr Agreement by failing to timely pay Plaintiff all amounts due under the Parr Agreement and prematurely terminating said agreement without any contractual basis therefor.  Specifically, WET breached the following contractual provisions:

**a. Section 3, Term**:  Section 3 of the Parr Agreement provides that "This Agreement shall commence on the Effective Date and shall terminate on 12-31-2020 (the "**Term**")," thereby providing for a one-year employment term. Because WET did not

provide 30 days' notice of its intent to terminate the Parr Agreement under Section 5.1 (and the conditions establishing WET's right to immediate termination under Section 5 did not occur, see below), WET prematurely and in violation of the Parr Agreement ended the contract before expiration of the one-year term.

**b.** **Section 5, Termination**: While the Parr Agreement permits termination by WET immediately under the circumstances listed in Section 5, none of those circumstances occurred in this case. Instead, WET terminated the contract under a false pretext in retaliation for Plaintiff's complaining to WET regarding WET's unsafe working conditions that almost cost Plaintiff his life.

**c. Section 4 and Schedule "B", Compensation**: Section 4 of the Parr Agreement states that WET will compensate Plaintiff in accordance with Schedule C of the contract.  Schedule C of the Parr Agreement provides, in pertinent part, as follows:

IN ORDER TO EXPEDITE PAYMENT, PLEASE EMAIL YOUR INVOICE TO ESCORTS@WINDENERGYTRANSPORT.COM WITHIN 48 HRS OF DELIVERY. WE DO OFFER QUICKPAY AT 3% VIA ACH OR PAYPAL (PAYPAL APPLIES FEE) WITH RECEIPT OF SUITABLE INVOICE.

WE PRIDE OURSELVES IN PAYING ESCORTS IN A TIMELY MANNER AFTER DELIVERY. STANDARD PAY WITHOUT QUIKCPAY - PILOT INVOICES ARE PAID 30 DAYS FROM THE DATE OF THE INVOICE DATE. IF ANY OF THE REQUIRED INFORMATION IS NOT PROVIDED IN A TIMELY OR CLEAR PROCESS, THIS MAY DELAY PAYMENTS.

WET failed to pay Plaintiff amounts it owed him under the Parr Agreement for services performed within 30 (days) of Plaintiff's submission of his invoice to WET, thereby breaching the terms of Section 4 and Schedule C of the Parr Agreement. Plaintiff submitted to WET his final invoice for services performed on or about August 8, 2020.  However, WET did not pay Plaintiff for this invoice until September 16, 2020, and paid him only $647.46 without providing him a breakdown of expenses. Plaintiff asserts this amount was

FISHERBROYLES
A LIMITED LIABILITY PARTNERSHIP

less than the minimum of $2,750.00 that Plaintiff was owed.

79.    Because of WET's breach of the Parr Agreement as herein alleged, Plaintiff has suffered damages in the sum of at least $162,001.02, which amount is exclusive of attorney's fees.

80.    By the terms of the Parr Agreement, Plaintiff is entitled to recover the aforesaid damages, as well as reasonable attorney's fees and costs incurred in the enforcement of the provisions of the Parr Agreement, and prejudgment interest.

## FIFTH CAUSE OF ACTION

### *Breach of Oral Contract*

(Against WET)

81.    Plaintiff realleges and incorporates the above paragraphs as though fully set forth herein.

82.    Plaintiff alleges, in the alternative to its breach of written contract claim against WET, that he is entitled to recover damages against WET under a breach of oral contract cause of action.

83.    On or about December 30, 2019, Plaintiff and WET entered into an oral contract, which specific terms are evidenced by the Parr Agreement, a copy of which is attached hereto as **Exhibit 1**.  Section 3 of the Parr Agreement states that WET agreed to retain Plaintiff for an initial term of one year (through December 31, 2020) provided that (a) WET did not exercise its right to terminate the Parr Agreement upon 30 days written notice; or (b) have a legitimate basis to terminate the Parr Agreement based on the other narrowly defined exceptions (See Parr Agreement, Section 5).

84.    The consideration agreed to by the parties' oral agreement was fair and reasonable.

85.    Plaintiff has performed all conditions, covenants, and promises required by it on its part to be performed in accordance with the terms and conditions of the oral agreement.

FISHERBROYLES®
A LIMITED LIABILITY PARTNERSHIP

86.     On or about August 8, 2020, WET breached the oral agreement by failing to timely pay Plaintiff all amounts due under the oral agreement and then prematurely terminating said agreement without any contractual basis.  Specifically, WET breached the following terms of the oral agreement, which are evidenced by the below-described provisions of the Parr Agreement:

a. **Section 3, Term**:  Section 3 of the Parr Agreement provides that "This Agreement shall commence on the Effective Date and shall terminate on 12-31-2020 (the "**Term**")," thereby providing for a one-year employment term. Because WET did not provide 30 days' notice of its intent to terminate the Parr Agreement under Section 5.1 (and the conditions establishing WET's right to immediate termination under Section 5 did not occur, see below), WET prematurely and in violation of the oral agreement ended the contract before expiration of the one-year term.

b. **Section 5, Termination**: While the Parr Agreement permits termination by WET immediately under the circumstances listed in Section 5, none of those circumstances occurred in this case. Instead, WET terminated the oral contract under a false pretext in retaliation for Plaintiff's complaining to WET regarding WET's unsafe working conditions that almost cost Plaintiff his life.

c. **Section 4 and Schedule "B", Compensation**: Section 4 of the Parr Agreement states that WET will compensate Plaintiff in accordance with Schedule C of the contract.  Schedule C of the Parr Agreement provides, in pertinent part, as follows:

IN ORDER TO EXPEDITE PAYMENT, PLEASE EMAIL YOUR INVOICE TO ESCORTS@WINDENERGYTRANSPORT.COM WITHIN 48 HRS OF DELIVERY. WE DO OFFER QUICKPAY AT 3% VIA ACH OR PAYPAL (PAYPAL APPLIES FEE) WITH RECEIPT OF SUITABLE INVOICE.

WE PRIDE OURSELVES IN PAYING ESCORTS IN A TIMELY MANNER AFTER DELIVERY. STANDARD PAY WITHOUT QUIKCPAY - PILOT INVOICES ARE PAID 30 DAYS FROM THE DATE OF THE INVOICE

DATE. IF ANY OF THE REQUIRED INFORMATION IS NOT PROVIDED IN A TIMELY OR CLEAR PROCESS, THIS MAY DELAY PAYMENTS.

WET failed to pay Plaintiff amounts it owed him under the oral agreement for services performed within 30 (days) of Plaintiff's submission of his invoice to WET, thereby breaching the terms of the oral agreement. Plaintiff submitted to WET his final invoice for services performed on or about August 8, 2020.  However, WET did not pay Plaintiff for this invoice until September 16, 2020, and paid him only $647.46 without providing him a breakdown of expenses. Plaintiff asserts this amount was less than the minimum of $2,500.00 that Plaintiff was owed.

87.     Because of WET's breach of the oral agreement as herein alleged, Plaintiff has suffered damages in the sum of at least $162,001.02, which amount is exclusive of attorney's fees.

88.     By the terms of the oral agreement, Plaintiff is entitled to recover the aforesaid damages, as well as reasonable attorney's fees and costs incurred in the enforcement of the provisions of the oral agreement, and prejudgment interest.

## SIXTH CAUSE OF ACTION

### *Quantum Meruit*

(Against WET)

89.     Plaintiff realleges and incorporates the above paragraphs as though fully set forth herein.

90.     Plaintiff alleges, in the alternative to his breach of written and oral contract claims against Defendants, that Plaintiff is entitled to recover in quantum meruit if it is determined that either a valid and enforceable written or oral contract does not exist, the existing written or oral contract does not cover the subject matter of the dispute between Plaintiff and WET, Plaintiff performed services that were outside of or over and above those contemplated by the existing written or oral contract, or the existing written or oral contract is void, invalid, or unenforceable.

FISHERBROYLES
A LIMITED LIABILITY PARTNERSHIP

91.     Plaintiff provided services, and purchased goods and equipment, in good faith and for the benefit of WET from December 30, 2019, through August 8, 2020, as alleged above.  The services were provided at WET's behest, and WET knowingly and voluntarily accepted and benefited from the services that Plaintiff provided.

92.     WET was aware and knew that Plaintiff was not providing the services gratuitously.

93.     WET knew that Plaintiff reasonably expected to be compensated for the services provided.

94.     On August 8, 2020, Plaintiff completed the work and, thereafter, demanded that WET compensate Plaintiff for the reasonable value of the services provided.

95.     The reasonable value of the services provided by Plaintiff is $150,153.58, plus interest, costs, and expenses.

96.     As a result of WET's refusal to pay Plaintiff for the reasonable value of the services provided, Plaintiff has been damaged in the amount of at least $124,485.42, plus interest, costs, and expenses.

97.     Plaintiff is entitled to recover the reasonable value of services rendered by Plaintiff to WET, to be determined according to proof at trial, but which Plaintiff believes is equal to at least $124,485.42; prejudgment interest on the said sum at the maximum rate allowed by law from August 8, 2020, to the date of judgment herein; an award of post-judgment interest for the maximum amount allowed by law; costs; reasonable attorneys' fees; and for any and all other relief the Court deems just and proper.

## SEVENTH CAUSE OF ACTION

### *Violation of Business & Profession Code § 17200, et seq.*

(Against WET)

98.     Plaintiff realleges and incorporates the above paragraphs as though fully set forth herein.

COMPLAINT FOR DAMAGES AND JURY DEMAND

99.    Business and Professions Code section 17200, *et seq*. ("Unfair Competition Law" or "UCL") prohibits any unlawful, unfair or fraudulent business act or practice, any unfair, deceptive, untrue or misleading advertising, and any violation of Business and Professions Code section 17500 *et seq*.

100.    The UCL's unlawful prong is uniquely broad. A business practice is unlawful under the UCL "if it is proscribed by some constitutional, statutory, regulatory, common law (*see*, *e.g.*, *CRST Van Expedited, Inc. v. Werner Enterprises, Inc*., 479 F.3d 1099, 1107 (9th Cir. 2007) (finding that the plaintiff adequately stated an affirmative claim under the UCL's unlawful prong based on violations of various common law rules); *Nat'l Rural Telecomms. Co-op. v. DIRECTV, Inc*., 319 F. Supp. 2d 1059, 1074–75 (C.D. Cal. 2003) (holding that a violation of common law can support a UCL claim, provided that the conduct is also unlawful, unfair, or fraudulent under the common law); *Bondanza v. Peninsula Hosp. & Med. Ctr*., 590 P.2d 22, 27 (Cal. 1979) (holding that business practices that violate common law rules adopted by prior court decisions will satisfy the UCL's unlawful prong, even if the rules at issue had never been codified); *see also William Stern*, First Substantive Prong of § 17200—What is an "Unlawful" Business Practice?, in California Practice Guide – Bus. & Prof. C. 17200, Ch. 3-F (West Rutter Group 2018) ("Virtually any law or regulation—federal or state, statutory or common law—can serve as predicate for a § 17200 'unlawful' violation. Thus, if a 'business practice' violates any law—literally—it also violates § 17200 and may be redressed under that section.")). (emphasis added). In other words, the UCL allows plaintiffs to "borrow[] violations of other laws" and assert those violations as "independently actionable." *Cel–Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co*., 973 P.2d 527, 539–40 (Cal. 1999). Even if the underlying predicate violation does not provide a private right of action, plaintiffs may nonetheless seek the remedies provided in the UCL.  (*See De La Torre v. CashCall, Inc*., 422 P.3d 1004, 1010 (Cal. 2018); *Stop Youth Addiction, Inc. v. Lucky Stores, Inc*., 950 P.2d 1086 (Cal. 1998)).

101.   Unconscionable contracts are unlawful under California law. (Cal. Civ. Code § 1670.5 (2019) (declaring unconscionable contracts unlawful)). In 1979, the California Legislature copied the Uniform Commercial Code's unconscionability provision verbatim and incorporated it into Civil Code § 1670.5. (*Id.*; *see also* Uniform Com. Code § 2–302). The portion of the Civil Code that houses this provision, Title 4, is entitled "Unlawful Contracts." Cal. Civ. Code §§ 1667–1670.11. The State Legislature has also incorporated the unconscionability doctrine into other statutory provisions, such as section 1770(19) of the Consumers Legal Remedies Act ("CLRA") and section 22302 of the Financial Code, Cal. Fin. Code § 22302 (2019). which regulates consumer lending in California. As such, plaintiffs may use the above-described statutory unconscionability provisions as predicate violations setting forth an independent cause of action under the UCL's unlawful prong.

102.   Plaintiff was unlawfully mischaracterized as an independent contractor of Defendant WET when, under controlling federal law, he was in fact an employee. Defendants willfully misclassified Plaintiff to avoid paying him overtime pay, foist the expenses of their business operations (including expenses associated with Plaintiff's employment) onto Plaintiff, and avoid the expense of payroll taxes they were required to bear as Plaintiff's employers.   By way of example, the "Pay Addendum To Pilot Independent Contractor Agreement" Defendants required Plaintiff to sign shortly after he entered into the Parr Agreement (and which is incorporated into the James Parr Agreement) provides that the Vehicle and insurance payments would be deducted from Plaintiff's gross pay.

103.   The addendum further states that "[s]hould independent contractor [sic] quit or is released [sic] for just cause, Wind Energy will retain vehicle and contractor forfeits all payments made to date." Specifically, the Addendum to the Parr Agreement provides that, "Should independent contractor quit or is released for just cause, Wind Energy will retain vehicle and contractor forfeits all payments made to date," regardless of any amounts paid by Plaintiff to WET to purchase the Vehicle. In other words, WET could fire Mr. Parr

FISHERBROYLES
A LIMITED LIABILITY PARTNERSHIP

with $1 owing on the Vehicle and keep the $29,000 already paid towards its purchase – a substantively unconscionable provision that "shocks the conscience."

104.   The terms of the Parr Agreement and Addendum that Plaintiff was required to sign was unlawful in that it violates the CLRA, sections 22202, 22204, 22302, 22303 of the Financial Code, and California Civil Code § 1670.5, which prohibits unconscionable contracts.

105.   Further, as alleged above, Defendants violated the FLSA's minimum wage, overtime, and record keeping requirements by misclassifying Plaintiff, which, also supports Plaintiff's UCL claim.

106.   As such, Defendants committed unlawful, unfair and/or fraudulent business practices, as defined by the UCL, by engaging in the practices described above, and used the Parr Agreement and the Addendum to facilitate same.

107.   As a result of Defendant's unfair and unlawful conduct, and because the Parr Agreement, including the Addendum) is permeated with unconscionability, Plaintiff seeks restitution under Business & Professions Code § 17203, costs of suit, reasonable attorneys' fees pursuant to Code of Civil Procedure § 1021.5, and such other and further relief as the Court may deem just and proper.

## EIGHTH CAUSE OF ACTION

### *Breach of the Covenant of Good Faith and Fair Dealing*

(Against WET)

108.   Plaintiff realleges and incorporates the above paragraphs as though fully set forth herein.

109.   Plaintiff agreed to provide services as a pilot driver to WET in exchange for WET paying him the gross amount of $11,000.00 per month for the duration of the contract.

110.   As alleged above, Plaintiff substantially performed all conditions, covenants, promises, and obligations under the contract alleged above between Plaintiff and WET.

111.   All conditions required to trigger WET's performance under the contract occurred or were otherwise excused. Indeed, as alleged above, Plaintiff performed not only all required duties as a pilot driver but was expected to and in fact performed additional duties.

112.   WET nonetheless concocted a pretext to terminate Plaintiff for "just cause," depriving him of the benefit of the contract, including wages and the Vehicle Plaintiff contracted to purchase from WET.

113.   In firing Plaintiff on a false pretext, WET did not act fairly and in good faith, particularly given the language, which WET drafted, in the Addendum to the Parr Agreement that would require Plaintiff to forfeit money paid toward the Vehicle. WET's conduct thus violated the implied covenant of good faith and fair dealing.

114.   Mr. Parr was thus necessarily harmed by WET's conduct and unfairly deprived of the benefit of the Parr Agreement in the form of lost wages and the forfeited partial payments toward the Vehicle.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs request the following relief:

## First and Second Causes of Action

Plaintiff requests the following relief:

    a.  All of the unpaid minimum and overtime wages in an amount according to proof at trial, plus an additional equal amount as liquidated damages;

    b.  Court costs, attorneys' fees and expenses that Plaintiff expends in successfully bringing this action to recover his unpaid wages; and

    c.  Any other relief deemed appropriate by the Court.

## Third Cause of Action

Plaintiff requests the following relief:

    a. Compensatory damages, in an amount subject to proof at trial;

    b. Court costs, attorneys' fees and expenses that Plaintiff expends in successfully bringing this action; and

    c. All other relief as the Court deems just and proper.

## Fourth and Fifth Causes of Action

Plaintiff requests the following relief:

    a. Contractual damages in an amount according to proof at trial and prejudgment interest;

    b. Court costs, attorneys' fees, and expenses that Plaintiff expends in successfully bringing this action; and

    c. Any other relief deemed appropriate by the Court.

## Sixth Cause of Action

Plaintiff requests the following relief:

    a. The reasonable value of services rendered by Plaintiff to WET, in an amount according to proof at trial, which Plaintiff believes is equal to at least $124,485.42, and prejudgment and post-judgment interest on said sum;

    b. Court costs, attorneys' fees, and expenses that Plaintiff expends in successfully bringing this action; and

    c. Any other relief deemed appropriate by the Court.

## Seventh Cause of Action

Plaintiff requests the following relief:

    a. For restitution under Business & Professions Code § 17203;

    b. For reasonable attorneys' fees and costs pursuant to Code of Civil Procedure § 1021.5; and

COMPLAINT FOR DAMAGES AND JURY DEMAND

c.   Such other and further relief as the Court may deem just and proper.

Eighth Cause of Action

Plaintiff requests the following relief:

a.   Damages equivalent to the wages Plaintiff would have earned under the Parr Agreement but for WET's unjustified termination thereof and business expenses Plaintiff advanced on WET's behalf in an amount to be determined by proof at trial, and prejudgment interest;

b.   Damages equivalent to the amount Plaintiff paid towards the purchase of the Vehicle and its insurance in amounts to be determined by proof at trial, and prejudgment interest;

c.   Court costs, attorneys' fees, and expenses that Plaintiff expends in successfully bringing this action; and

d.   Any other relief deemed appropriate by the Court.

<b><u>DEMAND FOR JURY TRIAL</u></b>

Plaintiff hereby demands trial of their claims by jury to the extent authorized by law.

FISHERBROYLES, LLP

Dated: July 20, 2022

*/s/ Adriana Cara*
Adriana Cara, Esq.
CA Bar No. 221915
2244 Faraday Avenue, PMB
Carlsbad, CA 92008
T: 760-448-5669
F: 760-448-5687
Adriana.Cara@fisherbroyles.com
*Attorneys for Plaintiff,*
*JAMES PARR*

COMPLAINT FOR DAMAGES AND JURY DEMAND

LAW OFFICES OF TIMOTHY L. MOORE

*/s/ Timothy L. Moore*
Timothy Moore, Esq.
CA Bar No. 305168
811 Mason Street
San Francisco, CA 94108
T: 415-697-1105
F: 415-886-0588
tim@tlmoorelawoffices.com
*Attorneys for Plaintiff,*
*JAMES PARR*

COMPLAINT FOR DAMAGES AND JURY DEMAND